SYLVIA LEWIS DEE *vs.* ROBERT DEE.

Essex.    April 12, 1973. — May 21, 1973.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Husband and Wife,* Separate support.    *Tenants by the Entirety.*

A Probate Court was without authority in a proceeding by a wife against her financially responsible husband for separate support under G. L. c. 209, § 32, to order that he vacate the marital home, owned by the parties as tenants by the entirety, in favor of the wife and their minor child for an indefinite period of time; the order was not authorized by G. L. c. 208, § 34B, or by c. 209, § 32D. [321-325] GOODMAN, J., dissenting.

PETITION filed in the Probate Court for the county of Essex on January 31, 1972.

The case was heard by *Jekanowski,* J.

*John Kimball, Jr.* (*F. Anthony Mooney* with him) for the respondent.

*Robert W. Welch* for the petitioner.

---

[8] We do not understand the defendant to argue that he was too intoxicated to hear the statements or understand them.

GRANT, J.  The question presented by the husband's appeal is whether a Probate Court, after hearing on the merits of the wife's petition brought under G. L. c. 209, § 32 (as amended by St. 1968, c. 370),[1] has power to order the husband to vacate the marital home in favor of the wife and a minor child for an indefinite period of time. The parties have stipulated that the home is held in a tenancy by the entirety, and the wife has not brought separate proceedings in equity by which she asserts rights in the home inconsistent with the existence of such a tenancy. Cf. *MacLennan* v. *MacLennan,* 311 Mass. 709, 711-713; *White* v. *White,* 322 Mass. 461, 464-465. The wife has not caused the home to be attached (G. L. c. 209, § 33[2]). The home need not be sold, as the husband is of sufficient financial ability, apart from his interest in the home, to pay not only for the general living expenses of the wife and child but also for suitable living accommodations for them outside the home.

During the continuance of the marital relationship "[t]he . . . husband, as tenant by the entirety . . . [is] entitled to the exclusive possession and control of the premises and to the rents and profits. He . . . [has] many of the usual incidents of ownership which the wife . . . [can]not exercise during his lifetime. Indeed, the usufruct of the property . . . [is] his alone. . . ." *Collins* v. *Croteau,* 322 Mass. 291, 292. "A separate support proceeding is designed

---

[1] "If a husband fails, without justifiable cause, to provide suitable support for his wife, or deserts her, or if the wife has justifiable cause for living apart from her husband . . . whether or not . . . she is actually living apart, the probate court may, upon . . . her petition . . . prohibit the husband . . . from imposing any restraint on . . . [her] personal liberty . . . during such time as the court by its order may direct or until further order of the court thereon and upon the application of the . . . wife . . . the court may make further orders relative to the support of the wife and the care, custody and maintenance of their minor children, may determine with which of their parents the children or any of them shall remain and may, from time to time, upon similar application revise and alter such order or make a new order or decree as the circumstances of the parents or the benefit of the children may require. . . ."

[2] "Upon such petition, an attachment of the husband's property may be made as upon a libel for divorce; and sections seventeen, thirty-three, thirty-five and thirty-eight of chapter two hundred and eight shall apply to proceedings upon such petition and to all subsidiary proceedings arising thereunder, so far as appropriate."

to secure the 'temporary support' of a wife; the decree does not create a judicial separation, nor establish a permanent status for the future. 'The court may not . . . provide for a division of their properties or of the property of the husband. *Coe* v. *Coe,* 313 Mass. 232. While in general the principles governing the award of alimony upon a libel for divorce are to be followed in administering the separate support statute, *Williamson* v. *Williamson,* 246 Mass. 270, 272; *Coe* v. *Coe,* 313 Mass. 232, 235, the powers granted to the court under G. L. (Ter. Ed.) c. 208, pertaining to libels for divorce, are somewhat broader than those granted by G. L. (Ter. Ed.) c. 209, §§ 32-37, in reference to separate support. Although G. L. (Ter. Ed.) c. 208, § 36, provides that in connection with a libel for divorce the court may require sufficient security for the payment of alimony according to its decree, there is no similar provision concerning allowances for separate support in c. 209.' *Dunnington* v. *Dunnington,* 324 Mass. 610, 612. See *Verdone* v. *Verdone,* 346 Mass. 263, 265." *Gould* v. *Gould,* 359 Mass. 29, 32. Thus, in the *Dunnington* case it was held that a Probate Court was without authority to order the husband to convey to the wife his interest in a tenancy by the entirety as security for his compliance with orders for separate support (324 Mass. 611-613), while in the *Gould* case it was held that a financially responsible husband could not be ordered to participate in a sale of the "home place" (held in a tenancy by the entirety) and a division of the proceeds with the wife (359 Mass. 32).[3] See also *Gediman* v. *Cameron,* 306 Mass. 138, 140, where it was said (Qua, J.) that the provisions of G. L. c. 209, §§ 32-34 (and those of G. L. c. 208, §§ 17, 33, 35 and 38, made applicable by those of G. L. c. 209, § 33), are to be "construed as exclusive of all other remedies" in separate support proceedings.

---

[3] An examination of the original papers (including the transcript of testimony) in the *Gould* case fails to disclose the ownership at the time of trial of any of the various items of tangible personal property discussed at 359 Mass. 33. Accordingly, it is far from clear that that case stands as precedent for any proposition that the husband can be ordered to surrender possession of his personal property to the wife in separate support proceedings.

There is no difference in principle between what was held to be forbidden in the *Dunnington* and *Gould* cases and what was effectively ordered in the present case, namely, that the husband relinquish the present right to the exclusive possession and control of the marital home which flows from the tenancy by the entirety for an indefinite period of time which could extend until the death of one of the parties. The order which was entered cannot be supported by anything found in G. L. c. 208, § 34B, inserted by St. 1970, c. 472.[4] There is nothing in the language or in the legislative history of that section[5] which suggests that it was intended to permit anything other than an interim order of sixty days' total duration entered in advance of a hearing on the merits of a libel for divorce (G. L. c. 208, §§ 1-22), of a libel for nullity of a marriage (G. L. c. 207, § 14), or of a petition for separate support (G. L. c. 209, §§ 32-34; c. 208, §§ 17, 33, 35 and 38).

The wife's reliance on the provisions of G. L. c. 209, § 32D (inserted by St. 1970, c. 450)[6] is misplaced. Although there may be situations in which that section may be brought to

---

[4] "Any court having jurisdiction of libels for divorce, or for nullity of marriage or of separate support or maintenance, may, upon filing of such libel or petition, and during the pendency thereof, order the husband or wife to vacate forthwith the marital home for a period not exceeding sixty days; provided, the court finds, after a hearing, that the health, safety or welfare of the petitioner or libellant or the minor children of the parties would be endangered or substantially impaired by a failure to enter such an order. The husband or wife, as the case may be, shall be given at least three days notice of such hearing and shall have the right to appear and be heard either in person or by his attorney."

[5] The legislative history of § 34B is found in the following: 1969 Senate Doc. Nos. 671 and 1265; Res. 1969, c.8; Forty-fifth Report of the Judicial Council, 1969 Pub. Doc. No. 144, pp. 50-53; 1970 House Doc. Nos. 2376 and 5636; St. 1970, c. 472. It is of interest to note that the Judicial Council thought such a provision as is now found in § 34B was unnecessary because a practical method already existed for dealing with a husband who insisted on staying in the marital home, namely, for the court to advise the husband of its power to order him to pay rent on suitable premises to be occupied by the wife and children. See 1969 Pub. Doc. No. 144, p. 51.

[6] "Whenever in any proceeding under section thirty-two [see fn. 1, *supra*] a decree shall be entered directing that a deed, conveyance or release of certain real estate, or interest therein, be made, such decree shall create an equitable right to its enforcement subject to the provision for recording of notice in section fifteen of chapter one hundred and eighty-four, in the party entitled thereto by the decree, and if the decree has not been complied with within three months after said decree has been entered and a certified copy of said decree is recorded or registered in the

bear (see *Gould* v. *Gould,* 359 Mass. 29, 32-33) there is
nothing in the language of the section itself which grants
power to a Probate Court in proceedings brought under
G. L. c. 209, § 32, to order a husband who is otherwise
capable of providing adequate support for his wife to
surrender his rights in the marital home, contrary to the
rule established in the *Dunnington* and *Gould* cases. The
language of § 32D was taken, with variations not here
material, from that of G. L. c. 208, § 34A, inserted by
St. 1963, c. 415.[7] The legislative history of the latter sec-
tion[8] suggests no more than an intention to implement
alimony decrees which might provide for the conveyance of
an interest in real estate in substantially the same manner
in which decrees for conveyance of real estate which are
entered in ordinary equity proceedings may be imple-
mented under the familiar and long standing provisions of
G. L. c. 183, §§ 43 and 44, as amended.[9] Indeed, the section
last cited is expressly referred to in both G. L. c. 208, § 34A,
and G. L. c. 209, § 32D.

---

manner provided by section forty-four of chapter one hundred and eighty-three,
then the decree itself shall operate to vest title to the real estate or interest therein
in the party entitled thereto by the decree as fully and completely as if such deed,
conveyance or release had been duly executed by the party directed to make it,
and so recorded." See 1970 House Doc. Nos. 2372 and 3090; St. 1970, c. 450.

[7] "Whenever a decree for alimony shall be made in a proceeding for divorce
directing that a deed, conveyance or release of any real estate or interest therein
shall be made such decree shall create an equitable right to its enforcement,
subject to the provisions for recording of notice in section fifteen of chapter one
hundred and eighty-four, in the party entitled thereto by the decree, and if the
decree has not been complied with at the time the decree of divorce becomes
absolute and is thereafter recorded in the manner provided by section forty-four of
chapter one hundred and eighty-three, then the decree itself shall operate to vest
title to the real estate or interest therein in the party entitled thereto by the decree
as fully and completely as if such deed, conveyance or release had been duly
executed by the party directed to make it."

[8] See 1962 House Doc. Nos. 1998 and 3323; Res. 1962, c. 26; Thirty-eighth
Report of the Judicial Council, Pub. Doc. No. 144, p. 12; 1963 House Doc.
No. 3376; 1963 Senate Doc. No. 822; St. 1963, c. 415.

[9] G. L. c. 183, § 43, as amended by St. 1937, c. 101, § 1: "Whenever a final
decree in equity shall be made by the supreme judicial, superior, probate or land
court directing that a deed, conveyance or release of any real estate or interest
therein shall be made, and the party directed to make such deed, conveyance or
release does not duly execute it within the time specified in the decree, the decree
itself shall operate to vest title to the real estate or interest in the party entitled

We conclude that the provisions of G. L. c. 209, § 32D, do not authorize what was ordered in this case.

So much of the decree as ordered the husband to vacate the marital home is reversed, and the case is remanded to the Probate Court for further proceedings in conformity with this opinion.

*So ordered.*

This case was initially heard by a panel composed of the Chief Justice and Justices Goodman and Grant and was thereafter submitted on the record and briefs to the other Justices, all of whom took part in this decision in accordance with the provisions of Rule 1:18 of this court.

GOODMAN, J. (dissenting). This is not a case in which the Probate Court has attempted to make a permanent division of real estate owned by husband and wife as tenants by the entirety or to compel its use as security. *Coe* v. *Coe,* 313 Mass. 232, 236. *Dunnington* v. *Dunnington,* 324 Mass. 610, 612. *Gould* v. *Gould,* 359 Mass. 29, 32. It has merely given the wife present possession of the marital home to use with her minor child whose custody she was granted. Indeed there is nothing in the decree which bars the husband's exercise in good faith of his legal right to sell or lease his present interest in the tenancy by the entirety, and it is unnecessary to consider any rights that may arise under such circumstances. This case seems to me to be governed by the *Gould* case, *supra,* upholding a provision in a Probate Court decree which granted the use of various articles of personal property[1] to the wife who had moved

thereto by the decree as fully and completely as if such deed, conveyance or release had duly been executed by the party directed to make it."

G. L. c. 183, § 44, as amended by St. 1937, c. 101, § 2: "The recording or registration of a duly certified copy of such decree, attested by the clerk, assistant clerk, register or assistant register, recorder or deputy recorder, as the case may be, of the court where made, in the registry of deeds of the district where said real estate is situated, shall have the same force and effect as if a duly executed deed, conveyance or release had so been recorded or registered."

[1] The decree in the *Gould* case provides: "It is further decreed that the petitioner [wife] shall be allowed for use in her new apartment only necessary furniture and furnishings, silverware, kitchenware, towelling, bedding, carpets, curtains, drapes and any other furnishings now contained in the home place, which may be used in the new apartment. It is further decreed that she also may have the radio, television set, stereo and records for use in the new apartment."

from the marital home and had custody of the children, while striking down a provision for the sale of the marital home and division of the proceeds. Both the home and the personal property are treated on the same footing, both in the opinion and in the briefs;[2] the only distinction made is between use without disturbing title which the court permits, and an order for sale, which is forbidden. On the basis of that distinction the Probate Court in this case, it is submitted, properly ordered that the wife have the use of the marital home.

The Judicial Council in its unfavorable report on proposed legislation which is now G. L. c. 208, § 34B (see fn. 5 of the majority opinion) states that Probate Courts do not have such power and refers to the practice of accomplishing the same result by "advis[ing] the husband at a hearing that if he insists upon staying in the marital home, the judge will make an order requiring the husband to pay rent on suitable premises to be occupied by the wife and children" (Forty-fifth Report of the Judicial Council, Pub. Doc. No. 144 of 1969, p. 51). The implication is that a support order for rent may be so high that the husband either prefers or is forced to permit the wife to remain and find other quarters for himself. This practice recognizes that where the wife is given custody of young or school age children it may be a real hardship to uproot them and that power is needed in the Probate Court to cope with this situation. The desirability of candor in the judicial process[3] should persuade us, if at all possible under the statutes, that Probate Court judges should be permitted to exercise that power directly in appropriate circumstances. That power is, I believe, fairly to be found in the broad language of G. L. c. 209, § 32, which provides that "the probate court

---

[2] The trial judge who had before him, as did the Supreme Judicial Court, the bill of sale of the furniture (which the transcript indicates the husband paid for), treated it as owned by the husband. Otherwise, the decree giving her the "use" of it would be pointless.

[3] "What is new in juristic thought to-day is chiefly the candor of its processes." Cardozo, Address before the New York State Bar Association, 1932 New York State Bar Association Report, 263, 298.

may . . . prohibit the husband or wife from imposing any restraint on the personal liberty of the other . . . and . . . may make further orders relative to the support of the wife and the care, custody and maintenance of their minor children" as well as in G. L. c. 209, § 37, which gives the Probate Court the power of the Superior Court found in G. L. c. 208, § 28, to "make such decree as it considers expedient relative to the care, custody and maintenance of their minor children . . .." See G. L. c. 209, § 33, making G. L. c. 208, § 33, applicable to separate support proceedings. What the court said in the *Gould* case, *supra,* at 33 with reference to the award of the use of the personal property is applicable to the use of the marital home: "Award of use of such personal property is entirely consistent with the concept of 'temporary support.' *Dunnington* v. *Dunnington, supra.* Power to make such an award permits a sensible solution to a practical problem, and serves the 'broad equitable and humane considerations' and the 'principles of fair dealing between husband and wife' which are properly considered in such a proceeding."